## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**MURPHY JERMAINE WILSON**                    **CIVIL ACTION**

**VERSUS**                                    **NO. 22-478-SDD-RLB**

**GMFS MORTGAGE, ET AL.**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the United States District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have fourteen (14) days after being served with the attached Report to file written objections to the proposed findings of fact, conclusions of law and recommendations therein. Failure to file written objections to the proposed findings, conclusions, and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions of the Magistrate Judge which have been accepted by the District Court.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on January 9, 2023.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**MURPHY JERMAINE WILSON**                     **CIVIL ACTION**

**VERSUS**                                     **NO. 22-478-SDD-RLB**

**GMFS MORTGAGE, ET AL.**

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before the Court are Plaintiff's Motion for Summary / Default Judgment (R. Docs. 6, 28), Plaintiff's "Motion to Joinder" as new defendants Computershare, Ltd. and Stuart Irving (R. Doc. 10), and Plaintiff's "Motion to Joinder" as new defendants Zais Financial Group and Dan Curry (R. Doc. 11).

Also before the Court are two Motions to Dismiss for Failure to State a Claim filed by GMFS LLC ("GMFS"), Specialized Loan Serving LLC ("SLS"), Tom Million, Ben Thompson, Will Eglin, Billy Maxwell, John Terrell Brown, Jr., Jeffrey Weston, Molly Willis, Tom D'Armond, Computershare Limited, and Stuart Irving (collectively, the "GMFS Defendants"). (R. Docs. 16, 36).

Also before the Court are two Motions to Dismiss filed by Experian Information Solutions, Inc., Trans Union LLC, and Christopher A. Cartwright (collectively, the "Experian Defendants"). (R. Docs. 27, 37).

Also before the Court is the Motion to Dismiss filed by Equifax Information Solutions LLC and Mark Begor (collectively, the "Equifax Defendants"). (R. Doc. 35).

Also before the Court is the Motion to Dismiss filed by Ready Capital Corporation ("Ready Capital). (R. Doc. 40).

Plaintiff filed an "Answer" to the Motions to Dismiss pending on or before December 5, 2022. (R. Doc. 31).

1

For the following reasons, it is recommended that this action, in its entirety, be dismissed with prejudice.

**I.    Background**

Murphy-Jermaine Wilson ("Plaintiff"), who is proceeding *pro se*, commenced this action on July 13, 2022. (R. Doc. 1). Plaintiff subsequently requested service of his Complaint and Summons by the U.S. Marshals Service. (R. Doc. 3). Given that Plaintiff is not proceeding pursuant to 28 U.S.C. § 1915 or 28 U.S.C. § 1916, the Court denied the request pursuant to Rule 4(c)(3) of the Federal Rules of Civil Procedure. (R. Doc. 4). In denying the motion, the Court noted that the Complaint was illegible and there was a question of whether there was complete diversity of citizenship to support diversity jurisdiction under 28 U.S.C. § 1332 as asserted in the Complaint. The Court ordered Plaintiff to file a legible copy of the Complaint and set a hearing to address the jurisdictional concerns. (R. Doc. 4 at 2).

On August 12, 2022, Plaintiff refiled a legible version of his "Quiet Title Complaint and Motion for Summary / Default Judgment" into the record. (R. Doc. 6, "Complaint"). Regardless of whether there is complete diversity of citizenship, the Court can properly exercise federal question jurisdiction under 28 U.S.C. § 1331 given Plaintiff's allegations that Defendants have violated federal law. (*See* R. Doc. 6 at 7). To the extent Plaintiff alleges state law claims, the Court can properly exercise supplemental jurisdiction under 28 U.S.C. § 1367.

Plaintiff attached the following documents to his Complaint: a partially handwritten "Money Order" along with documents purporting that Plaintiff paid $339,373.41 on January 13, 2022 to GMFS (R. Doc. 6-1); a Promissory Note (the "Note") in the amount of $313,555.00 (R. Doc. 6-2); and a Mortgage securing the Note with property located at 3282 Meadow Grove Avenue, Zachary, Louisiana, 70791 (the "Property") in favor of GMFS (R. Doc. 6-3).

The GMFS Defendants represent that "[w]hile the loan was in default in 2018, necessitating the filing of a foreclosure action, GMFS and SLS, the servicer of the loan, subsequently reached an agreement to modify the loan terms for Mr. and Mrs. Wilson and they are presently current in their payments." (R. Doc. 16-4 at 7).

Plaintiff's suit can be summarized as an attempt to obtain a ruling extinguishing his obligation to make payments on the Note. Put another way, Plaintiff wants a free house. Plaintiff alleges that the Note is unenforceable because the loan was transferred without disclosure to the him; that the Note is unenforceable for lack of consideration; and that his tender of the Money Order to GMFS results in a satisfaction of his debt. (R. Doc. 6 at 7-17; R. Doc. 28 at 12-28). Plaintiff also alleges that his continued obligation to make payments on the Note is tantamount to peonage in violation of 42 U.S.C § 1994 and the Thirteenth Amendment of the U.S. Constitution, and that Defendants' acts constitute wire fraud under 18 U.S.C. § 1343. (R. Doc. 6 at 7-8; R. Doc. 28 at 11-12). As discussed below, these allegations are patently frivolous.[1]

On September 22, 2022, Plaintiff filed his "Motion[s] to Joinder" Computershare, Ltd. and Stuart Irving (R. Doc. 10) and Zais Financial Group and Dan Curry as new defendants. (R. Doc. 11).

---

[1] Plaintiff previously sued GMFS alleging that it trespassed against his property "by way of its use of a forged instrument" and sought $950,000 in compensation for the alleged trespass. *Wilson v. GMFS LLC,* No. 18-00840, 2019 WL 8301667, at *1 (M.D. La. May 24, 2019). In dismissing the action, the district judge observed that Plaintiff's arguments were "a labyrinthine web of legal jargon, contextless statutory citations, and case law of dubious value." *Id.*; *see also Wilson*, 2019 WL 1125651, at *2 (M.D. La. Mar. 12, 2019) ("The Court is concerned that Plaintiff's filings in this matter border on frivolous and vexatious, and serve only to delay and obstruct Defendant. The Court admonishes Plaintiff to take heed that the Court is not his tool to delay foreclosure proceedings against him by filing long, meandering, frivolous, pleadings, but rather a forum wherein he may state his case utilizing arguments and law pertinent to the facts and hand, having followed all applicable rules of Court."). Here, the bulk of Plaintiff's allegations similarly consist of the recitation of various legal doctrines and pseudo-legal theories.

3

On November 7, 2022, the GMFS Defendants filed a Motion to Dismiss seeking dismissal of the Complaint. (R. Doc. 16).[2] The GMFS Defendants argue that Plaintiff's claims should be dismissed for failure to state a claim because the Note is enforceable and Plaintiff's "Money Order" does not extinguish his obligations under the Note.

On November 28, 2022, the Experian Defendants filed a Motion to Dismiss seeking dismissal of the Complaint. (R. Doc. 27). The Experian Defendants argue that Plaintiff has not raised any specific allegations against them (or any of the credit agency defendants), and that his allegations are otherwise conclusory and frivolous.

On November 29, 2022 – more than 21 days after the filing of the first Motion to Dismiss – Plaintiff filed a First Amended Complaint into the record without obtaining leave of court or otherwise indicating that consent of the opposing parties was obtained. (R. Doc. 28).[3] This Amended Complaint generally asserts the same claims raised in the Original Complaint, but also includes as defendants Computershare, Ltd., Stuart Irving, Zais Financial Group, and Dan Curry (the individuals and entities that Plaintiff had previously sought to join as defendants through the "Motion[s] to Joinder").

On December 5, 2022, Plaintiff filed an "Answer" to the foregoing Motions to Dismiss. (R. Doc. 31). This document primarily asserts the same allegations as found in Plaintiff's Complaint and Amended Complaint.

---

[2] Computershare Limited and Stuart Irving joined this Motion to Dismiss. The Motion notes, however, that "GMFS believes that Zais Financial Group no longer exists; therefore it and Dan Curry are not included in the defendants filing his motion, though the claims brought by Mr. Wilson against them (as well as against Transunion, Equifax, and Experian) appear no less spurious than those brought against [the GMFS Defendants]." (R. Doc. 16-4 at 2 n.1).

[3] On September 6, 2022, Plaintiff submitted an E-Service & E-Notice Consent Form. (R. Doc. 9). Accordingly, after this date, Plaintiff received service of all electronic filings by electronic means in accordance with the provisions of Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure. Plaintiff is not entitled to an additional three days under Rule 6(d) of the Federal Rules of Civil Procedure.

4

On December 13, 2022, the Equifax Defendants filed a second Motion to Dismiss addressing the First Amended Complaint (R. Doc. 35), the GMFS Defendants filed a second Motion to Dismiss addressing the First Amended Complaint (R. Doc. 36), and the Experian Defendants filed a Motion to Dismiss addressing the First Amended Complaint (R. Doc. 37). These motions raise arguments similar to those raised in the motions to dismiss seeking dismissal of the original Complaint. Plaintiff did not timely oppose these motions. LR 7(f).

Finally, on December 30, 2022, Ready Capital, an owner of GMFS, filed its own Motion to Dismiss. (R. Doc. 40). In addition to joining the arguments raised by the GMFS Defendants, Ready Capital argues it may not be held liable solely based on its ownership in GMFS. (R. Doc. 40-1 at 8-9). The deadline to oppose this motion has not expired. LR 7(f).[4]

## II. Law and Analysis

### A. Pro Se Litigants

*Pro se* pleadings are to be held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *see also SEC v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (recognizing the established rule that this court "must construe [a *pro se* plaintiff's] allegations and briefs more permissively"). Furthermore, a court must liberally construe a *pro se* complaint, taking all well-pleaded allegations as true. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam). Nevertheless, "a *pro se* litigant is not exempt . . . from compliance with relevant rules of procedural and substantive law." *NCO Fin. Systems, Inc. v. Harper–Horsley*, No. 07-4247, 2008 WL 2277843, at *3 (E.D. La. May 29, 2008) (quoting *Birl v. Estelle*, 660 F.2d 592, 593 (5th Cir. 1981)). As such, a *pro se* plaintiff's complaint "must set

---

[4] Given that Plaintiff's claims against all named defendants are patently frivolous, the Court finds no basis for delaying resolution of this action by waiting for an opposition to this motion.

forth facts giving rise to a claim on which relief may be granted." *Johnson*, 999 F.2d at 100 (citation omitted).

Additionally, "[a] liberal reading of plaintiff's pleadings is the only special treatment afforded *pro se* plaintiffs by the courts." *Kiper v. Ascension Parish Sch. Bd.*, No. 14-313, 2015 WL 2451998, at *1 (M.D. La. May 21, 2015) (citing *Callahan v. C.I.R.*, No. 99-0295, 2000 WL 1141607, at *1 (M.D. La. Apr. 10, 2000)). A "court is not required to search for or try to create causes of actions or find material issues of fact for *pro se* plaintiffs." *Id.* Finally, a *pro se* litigant is not entitled to greater rights than would be a litigant represented by a lawyer." *NCO Fin. Systems*, 2008 WL 2277843, at *3 (citing *Birl*, 660 F.2d at 593).

## B. Plaintiff's Motion for Summary Judgment/Default Judgment (R. Docs. 6, 28)

As an initial matter, Plaintiff's Complaint and Amended Complaint purport to include embedded Motions for Summary Judgment and Motions for Default Judgment. These "motions" violate Local Rule 7(d), which requires all contested motions to "be accompanied by separate memoranda which must contain a concise statement of reasons supporting the motion and citations of authorities." LR 7(d).

Furthermore, to the extent the Complaint and Amended Complaint seek relief pursuant to Rule 55 or Rule 56 of the Federal Rules of Civil Procedure, that is relief is unavailable. Plaintiff has not set forth any evidence demonstrating that entry of a default is merited because a defendant "has failed to plead or otherwise defend" this action after service of process, much less that a default judgment is merited. *See* Fed. R. Civ. 55(a)-(b). Similarly, given that the parties have not conducted any discovery, Plaintiff cannot demonstrate "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

6

As discussed below, Plaintiff's action is subject to dismissal with prejudice in its entirety because Plaintiff has failed to state a claim upon which relief can be granted against any of the named defendants, and any attempt at amendment is futile. Accordingly, Plaintiff's own premature "motions" for summary judgment and default judgment (R. Doc. 6, 28) must be denied.

    **C.    Plaintiff's "Motion[s] to Joinder" (R. Docs. 10, 11) and Amended Complaint (R. Doc. 28)**

Plaintiff seeks leave to name as additional defendants Computershare Ltd. and Stuart Living (R. Doc. 10) and Zais Financial Group and Dan Curry (R. Doc. 11). Without waiting for a ruling on this "Motion[s] to Joinder," Plaintiff filed his Amended Complaint directly into the record, which purports to name these individuals and entities as additional defendants. (R. Doc. 28).

Plaintiff did not file the Amended Complaint in accordance with Rule 15(a)(1), which allows the filing of an amended pleading into the record "as a matter of course" without leave of court within 21 days after service of a Rule 12(b) motion. The GMFS Defendants filed their Rule 12(b) motion on November 7, 2022. (R. Doc. 16). Plaintiff filed the Amended Complaint into the record on November 29, 2022, more than 21 days after service of the Rule 12(b).

Accordingly, the Court will consider whether amendment is otherwise appropriate under Rule 15(a)(2). Under Rule 15(a)(2), after the period for amending as a matter of course elapses, "a party may amend its pleading only with the opposing party's written consent or the court's leave" and a "court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The rule "evinces a bias in favor of granting leave to amend." *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S.A. Co.*, 195 F.3d 765, 770 (5th Cir. 1999) (quoting *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981)). Although leave to amend should not

7

be automatically granted, "[a] district court must possess a substantial reason to deny a request for leave to amend[.]" *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 994 (5th Cir. 2005) (quotations omitted). The Court may consider several factors when determining whether to grant leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment. . . ." *See Rhodes v. Amarillo Hosp. Dist.*, 654 F.2d 1148, 1153 (5th Cir. 1981) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

There is no indication in the record that any of the Defendants consented to the filing of the Amended Complaint. Furthermore, as discussed below, the amendments were futile given that the underlying claims in the original Complaint are patently frivolous. That said, the Defendants have treated the Amended Complaint as the "operative pleading" and have filed Rule 12(b) motions addressing that amended pleading. Given the record, the Court finds it appropriate to conclude that the Amended Complaint is to be treated as the operative pleading under Rule 15(a)(2). This renders the relief sought in Plaintiff's "Motion[s] to Joinder" moot because Computershare Ltd., Stuart Living, Zais Financial Group, and Dan Curry are named defendants in light of the Amended Complaint.

In sum, it is recommended that the district judge treat the Amended Complaint (R. Doc. 28) as the operative pleading, and deny Plaintiff's "Motion[s] to Joinder" (R. Docs. 10, 11) as moot.

### D. Defendants' Motions to Dismiss (R. Docs. 16, 27, 35, 36, 37, 40)

#### 1. Legal Standards

When reviewing a Rule 12(b)(6) motion to dismiss, the court must accept all well-pleaded facts as true and view them in the light most favorable to the non-moving party. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996); *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992). Nonetheless, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is not bound to accept a legal conclusion couched as a factual allegation as true. *Id.*

In deciding a motion to dismiss, the Court may consider documents that are attached to the motion to dismiss as part of the pleadings if they refer to the Plaintiff's complaint and are central to his claim. *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th. Cir. 2004).

Furthermore, the undersigned may perform a review to determine whether the complaint should be dismissed as frivolous or malicious to the extent any named defendant has not expressly sought dismissal of Plaintiff's claims. Plaintiff's payment of the filing fee does not preclude this review. *See Mallard v. United States District Court for the Southern District of Iowa*, 490 U.S. 296, 307-308 (1989) ("Statutory provisions may simply codify existing rights or powers. [28 U.S.C.] § 1915(d), for example, authorizes courts to dismiss a 'frivolous or

9

malicious' action, but there is little doubt they would have power to do so even in the absence of this statutory provision."); *see also Doe v. City of Baton Rouge*, No. 20-514, 2021 WL 304392, at *2 (M.D. La. Jan. 29, 2021) ("[R]egardless of whether Plaintiff were to pay the filing fee, this Court has the inherent power to screen a pleading for frivolousness."), *appeal dismissed*, No. 21-30061, 2022 WL 881753 (5th Cir. Mar. 24, 2022), *cert. denied sub nom. Doe v. City of Baton Rouge, Louisiana*, 143 S.Ct. 376 (2022).

### 2. Plaintiff's Claims Regarding the Debt Obligations Under the Note

As stated above, Plaintiff raises various claims as to why relief should be granted, including: that the Note is unenforceable because the loan was transferred without disclosure to the him; that the Note is unenforceable for lack of consideration; and that his tender of the Money Order to GMFS results in a satisfaction of his debt. (R. Doc. 6 at 7-17; R. Doc. 28 at 12-28). Plaintiff also alleges that his continued obligation to make payments on the Note is tantamount to peonage in violation of 42 U.S.C § 1994 and the Thirteenth Amendment of the U.S. Constitution, and that Defendants' acts constitute wire fraud under 18 U.S.C. § 1343. (R. Doc. 6 at 7-8; R. Doc. 28 at 11-12). Plaintiff's allegations in the Complaint and Amended Complaint are baseless, and must be dismissed as frivolous.

To the extent that Plaintiff is alleging that the Note is invalid (or has been rendered invalid) under Louisiana contract law, that cause of action must be dismissed. "Interpretation of a contract is the determination of the common intent of the parties." La. Civ. Code art. 2045. "The language of the policy is the starting point for determining that common intent." *Angus Chem. Co. v. Glendora Plantation, Inc.*, 782 F.3d 175, 180 (5th Cir. 2015) (quoting *Six Flags, Inc. v. Westchester Surplus Lines Ins. Co.*, 565 F.3d 948, 954 (5th Cir. 2009)). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may

10

be made in search of the parties' intent." La. Civ. Code art. 2046. "The determination of whether a contract is clear or ambiguous is a question of law. Moreover, when a contract can be construed from the four corners of the instrument without looking to extrinsic evidence, the question of contractual interpretation is answered as a matter of law and summary judgment is appropriate." *Angus Chem. Co.*, 782 F.3d at 180 (quoting *Sims v. Mulhearn Funeral Home, Inc.*, 956 So. 2d 583, 590 (La. 2007)).

Here, a plain reading of the Note and Mortgage provide that the Note can be transferred without prior notice and there was an exchange of consideration. The Note and Mortgage provide that the Borrower received a loan and corresponding payment to the seller of the Property of $313,555.00 by GMFS. The Mortgage specifically identified Plaintiff and his wife as "Borrower" and GMFS as "Lender." (R. Doc. 6-3 at 2-3). In Paragraph 1 of the Note, the Borrower acknowledges by signature his or her understanding that "the Lender may transfer this Note." (R. Doc. 6-2 at 2). In Paragraph 20 of the Mortgage, the Borrower was informed, and acknowledged by signature, that the Mortgage would be serviced by a mortgage loan servicer, who may be the lender or a third-party, and that notice of servicing transfer would be provided to the Borrower:

> The Note . . . can be sold one or more times without prior notice to the borrower. A sale might result in a changing the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security instrument . . . .

(R. Doc. 6-3 at 16). Under this same provision, the Borrower was also informed of, and acknowledged by signature, the possibility that the Note could be sold without advance notice to the Borrower, and that there "might be one or more changes of the Loan Servicer." (R. Doc. 6-3 at 16).

11

Moreover, Plaintiff's tender of a handwritten "Money Order" does not satisfy the remaining debt on the Note. It appears that Plaintiff is calling into question the validity of the loan itself through what is known as the "vapor money," "unlawful money" or "redemption" theories of debt. In a section of the pleadings titled "The Presumption of a Loan to Plaintiff (Claimant)," Plaintiff suggests that he did not receive any "money" in exchange for signing the Note and Mortgage, and that GMFS or its agents used the Note "as money equivalent that was deposited into a transaction account a bank" to obtain a profit. (R. Doc. 6 at 7; R. Doc. 28 at 12). In another section of the pleadings titled "The Law of Tender of Payment," Plaintiff suggests that his "tender instrument" (the self-constructed Money Order) clears him of the alleged debt of $339,373.41, and then suggests that the Note does not involve "real money" (*i.e.*, "gold/silver"). (R. Doc. 6 at 10-11; R. Doc. 28 at 17-18).

These "vapor money," "unlawful money," or "redemption" theories of debt "are all, in essence, based on the premise that "because the United States went off the gold standard in 1933 with the passage of HJR–192, the United States has been bankrupt and lenders have been creating unenforceable debts because they are lending credit rather than legal tender." *Green v. Pryce*, No. 15-3527, 2015 WL 4069176, at *2 (E.D.N.Y. July 1, 2015) (quotation omitted); *see also McLean v. Cap. One Auto Fin.*, No. 21-910, 2022 WL 2763158, at *2 (W.D. Tex. Mar. 25, 2022) ("All of Plaintiff's claims appear to rest on the theory that the promissory note she executed is the equivalent of 'money' that she gave to Defendant, and that because Defendant allegedly accepted the note, Defendant essentially 'converted' the note and satisfied her automobile loan obligation."), *report and recommendation adopted*, 2022 WL 3449502 (W.D. Tex. June 9, 2022). "The essence of the 'vapor money' theory is that promissory notes (and similar instruments) are the equivalent of 'money' that citizens literally 'create' with their

signatures." *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212 (D. Conn. 2010). This theory – whether premised on fraud or some other cause of action – has "been universally and emphatically rejected by numerous federal courts for at least the last 25 years." *Id*. at 214 (citing cases).

The "vapor money" theory of recovery is patently frivolous no matter how disguised under a legitimate cause of action. *See*, *e.g.*, *Torne v. Republic Mortgage LLC*, No. 09-2445, 2010 WL 1904507 (D. Nev. May 10, 2010) (dismissing, in some instances *sua sponte,* claims alleging fraud, conversion, conspiracy, extortion, securities fraud, and violations of the Truth in Lending Act (TILA), the Fair Credit Reporting Act (FCRA), the Fair Debt Collection Practices Act (FDCPA), and GAAP, based on "vapor money" theories of recovery where the plaintiff claimed his loan was invalid because it was made with credit rather than cash); *Barber v. Countrywide Home Loans, Inc.*, No. 09-40, 2010 WL 398915, at *4 (W.D.N.C. Oct. 7, 2009) (dismissing "utterly frivolous" and "patently ludicrous" claims of fraud, racketeering, and conspiracy based on vapor and unlawful money claims, and advising plaintiffs that their "tactics are a waste of their time as well as the court's time, which is paid for by hard-earned tax dollars").

Furthermore, Plaintiff's disjointed allegations under various legal theories to avoid payment under the Note amount to improper "shogun pleading." *See O'Neal v. Universal Prot. Serv., LLC*, No. 21-00737, 2022 WL 1631970, at *5 (M.D. La. May 23, 2022) (dismissing allegations based on the basis of violations of Rules 8 and 10 in light of "shotgun pleading" where the pleading "contains irrelevant factual allegations and legal conclusions, states immaterial facts not obviously connected to any particular cause of action, copies wholesale large swaths of statutory text without specifying which provision (if any) the Defendants are

13

accused of violating, and indiscriminately alleges nine claims against two separate Defendants without any indication whether (or how) each Defendant is liable.") (citing *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1322-23 (11th Cir. 2015)).

For the foregoing reasons, all of Plaintiff's claims in the Complaint and Amended Complaint are subject to dismissal with prejudice.

### 3. Plaintiff's Claims for Wire Fraud, Peonage, and Violation of the Thirteenth Amendment

In addition to his direct attacks to his debt obligations, Plaintiff has alleged that his continued obligation to make mortgage payments is tantamount to peonage in violation of 42 U.S.C § 1994 and the Thirteenth Amendment of the U.S. Constitution, and that Defendants' acts constitute wire fraud under 18 U.S.C. § 1343. (R. Doc. 6 at 7-8; R. Doc. 28 at 11-12).

Plaintiff alleges that "[s]ince the funds were forward from the transaction account via a wire transfer, we understand that that constitutes wire fraud with intent to defraud Plaintiff (Claimant) over the next 30 years." (R. Doc. 6 at 8; R. Doc. 28 at 13). Given Plaintiff's reliance on a "vapor money" theory of recovery, this conclusory assertion is unfounded. At any rate, the Fifth Circuit has expressly held that there is no private right of action for violation of 18 U.S.C. § 1343 for a civil litigant. *See Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634, 636 (5th Cir. 1974).

14

Plaintiff's claims for violation of 42 U.S.C § 1994[5] and the Thirteenth Amendment[6] also fail. Again, Plaintiff's claims are unfounded because they are premised upon an invalid "vapor money" theory of recovery. Moreover, Plaintiff does not allege facts supporting a finding that government action has resulted in his enslavement or involuntary servitude (including peonage). These claims are subject to dismissal because Plaintiff owes a debt; he has not been forced into slavery or involuntary servitude with respect to repayment of that debt. *Burns v. First Am. Tr. Servicing Sols., LLP*, No. 11-0023, 2011 WL 1344214, at *5 (N.D. Cal. Apr. 8, 2011) (dismissing Thirteenth Amendment and Section 1994 claims where, while plaintiff did allege that they may owe a debt to certain banks, they did not allege that those defendants required the plaintiffs "to work for it until any debt is retired."), *aff'd*, 474 F. App'x 514 (9th Cir. 2012); *see also Marvin v. Cap. One*, No. 15-1310, 2016 WL 4548382, at *2 n.1 (W.D. Mich. Aug. 16, 2016) (the plaintiff's cursory references to a Thirteenth Amendment violation for "involuntary servitude," "debt slavery," and "peonage" under a "vapor money" theory did "not sent forth any coherent cause of action under the Constitution"), *report and recommendation adopted*, 2016 WL 4541997 (W.D. Mich. Aug. 31, 2016), *aff'd*, No. 16-2307, 2017 WL 4317143 (6th Cir. June 6, 2017); *cf Herndon by Herndon v. Chapel Hill-Carrboro City Bd. of Educ.*, 89 F.3d 174, 181 (4th Cir. 1996) (school district's mandatory community service program for high school

---

[5] *See* 42 U.S.C.A. § 1994 ("The holding of any person to service or labor under the system known as peonage is abolished and forever prohibited in any Territory or State of the United States; and all acts, laws, resolutions, orders, regulations, or usages of any Territory or State, which have heretofore established, maintained, or enforced, or by virtue of which any attempt shall hereafter be made to establish, maintain, or enforce, directly or indirectly, the voluntary or involuntary service or labor of any persons as peons, in liquidation of any debt or obligation, or otherwise, are declared null and void."). "Peonage is a term descriptive of a condition which has existed in Spanish America, and especially in Mexico. The essence of the thing is compulsory service in payment of a debt. A peon is one who is compelled to work for his creditor until his debt is paid." *Bailey v. State of Alabama*, 219 U.S. 219, 242 (1911). "[P]eonage is a form of involuntary servitude within the meaning of the Thirteenth Amendment." *Taylor v. State of Ga.*, 315 U.S. 25, 29 (1942).

[6] *See* U.S. Const. Amend. XIII ("Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction.").

15

graduation did not violate student's rights to freedom from involuntary servitude under the Thirteenth Amendment, noting that "the community service requirement is in no way comparable to the horrible injustice of human slavery").

### 4. Plaintiff's Claims Regarding the Credit Agency Defendants

Finally, Plaintiff alleges that the Equifax Defendants, Experian Defendants, and Transunion Defendants: that "facilitated, without question, the reporting of false bad credit concerning the alleged loan to Plaintiff." (R. Doc. 6 at 5-6; R. Doc. 28 at 8). In addition to Plaintiff's false premise that the Note is unenforceable under a "vapor theory" of recovery, Plaintiff simply does not raise any cognizable allegations against the consumer reporting agencies under the Fair Credit Reporting Act or the Fair Debt Collection Practices Act. Plaintiff's claims against these defendants (to the extent they are separate and apart from the claims involving the underlying Note) are conclusory and must be dismissed.

### 5. Amendment is Futile

In most circumstances, a court should allow a plaintiff at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) (plaintiffs generally given one chance to amend before dismissal unless "it is clear that the defects are incurable"). However, a court should deny leave to submit futile amendments that are "insufficient to state a claim." *Jamieson v Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985). In other words, "the same standard of legal sufficiency as applies under Rule 12(b)(6)" applies to futility. *Stripling v. Jordan Prod. Co., LLC*, 234 F.3D 863, 873 (5th Cir. 2000).

Here, Plaintiff has already been allowed to amend the pleading once pursuant to Rule 15(a)(2) given that his Amended Complaint has been treated as the operative pleading.

Accordingly, no additional amendment is warranted. Furthermore, for the reasons discussed above, any amendment of the claims would be futile considering the validity of Plaintiff's debt obligations under the Note.

Accordingly, it is recommended that the pending Motions to Dismiss (R. Docs. 16, 27, 35, 36, 37, 40) be granted, Plaintiff be denied an additional opportunity to amend the pleadings, and that all of Plaintiff's claims be dismissed with prejudice.

### III.    Conclusion

Based on the foregoing,

**IT IS RECOMMENDED** that Defendants' Motions to Dismiss (R. Doc. 16, 27, 35, 36, 37, 40) be **GRANTED**, and all of Plaintiff's claims raised in the Complaint and Amended be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motions for Summary / Default Judgment (R. Docs. 6, 28) and Plaintiff's "Motion[s] to Joinder" (R. Docs. 10, 11) be **DENIED AS MOOT.**

**IT IS FURTHER RECOMMENDED** that Plaintiff be advised that any further frivolous filings in this case or any future case may result in monetary or other sanctions.

Signed in Baton Rouge, Louisiana, on January 9, 2023.

_____
**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**